321 S.E.2d 677

**STATE ex rel. Eldon J. HAUGHT, etc.**

v.

**George Douglas DONNAHOE, et al, etc.**

No. 16427.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 12, 1984.

Decided Oct. 11, 1984.

David G. Hanlon, Harrisville, for petitioners.

Sam White, St. Marys, for Donnahoe.

Chauncey H. Browning, Atty. Gen. and Marianne K. Hoover, Asst. Atty. Gen., Charleston, for Manchin.

Keith White, Asst. Pros. Atty., St. Marys, for Fox, Payne & Long.

Lucien R. Sammons, Jr., Pros. Atty., West Union, for Britton, Michaels & Bland.

McGRAW, Justice:

I

This is an original proceeding in mandamus, by the petitioner, Eldon J. Haught, a duly registered voter of Ritchie County, West Virginia, and Chairman of the Ritchie County Democratic Executive Committee. One of the respondents in this proceeding, George Douglas Donnahoe, was the sole Republican candidate for that party's nomination for Judge of the Circuit Court of the Third Judicial Circuit. As a result of the June 5, 1984 primary election, he became the Republican nominee for that office. The petitioner seeks a writ to compel the respondents, ballot commissioners for the counties of Ritchie, Pleasants and Doddridge, which comprise the Third Judicial Circuit of this State, to omit the name of respondent Donnahoe from the official ballot of the general election of November 6, 1984. The petitioner also seeks to compel the respondent, Secretary of State A. James Manchin, to withhold or withdraw the certification of the nomination of respondent Donnahoe as the Republican nominee for the office of Judge of the Circuit Court of the Third Judicial Circuit.

By way of this petition for writ of mandamus, the petitioner specifically challenges respondent Donnahoe's eligibility for such judicial office under West Virginia Constitution article VIII, section 7, and asks this Court to direct the above-mentioned election officials to perform their respective legal duties under the election laws of this State. *See* West Virginia Code §§ 3–1–1 *et seq.* (1979 Replacement Vol. & Supp.1984). We find the respondent candi-

date ineligible under article VIII, § 7, to be elected to or hold the office of circuit judge. Accordingly, we grant the writ.

 Original jurisdiction in mandamus in cases involving elections is conferred upon this Court by article VIII, section 3 of the West Virginia Constitution, and, more specifically, by West Virginia Code § 3–1–45 (1979 Replacement Vol.).[1] In Syllabus point 1 of *State ex rel. Summerfield v. Maxwell,* 148 W.Va. 535, 135 S.E.2d 741 (1964), this Court held:

> The eligibility of a candidate for an elective office may be determined in a proceeding in mandamus and, upon a determination therein that a candidate is ineligible to be elected to or to hold the office for which he seeks nomination or election, a writ of mandamus will issue directing the board of ballot commissioners to strike or omit such candidate's name from the primary or general election ballot.

A thorough review of this special form of mandamus is contained in this Court's most recent decision in this area. *See White v. Manchin,* 173 W.Va. 526, 318 S.E.2d 470 (1984). The applicability of this form of action to this particular case is beyond question. The underlying issues regarding respondent Donnahoe's eligibility present more novel questions.

## II

Article VIII, § 7 of the West Virginia Constitution, in its first paragraph, provides:

> All justices, judges and magistrates must be residents of this State and shall be commissioned by the governor. No per-

son may hereafter be elected as a justice of the supreme court of appeals unless he has been admitted to practice law for at least ten years prior to his election, *and no person may hereafter be elected as a judge of a circuit court unless he has been admitted to practice law for at least five years prior to his election.* (emphasis added).

A brief summary of the facts giving rise to this proceeding, which put the exact meaning of the above language at issue, is in order at this point.

Respondent George Douglas Donnahoe holds a law degree from Duke University. He was admitted to the practice of law in the State of California on June 5, 1963, and, at that time, established a one-man office in the Los Angeles area where, until recently, he actively engaged in the practice of law.

In late 1978, respondent Donnahoe purchased a farm in Doddridge County, West Virginia, and, on July 10, 1979, he and his family moved to this locale. By his affidavit, which accompanies the response to the subject petition, respondent Donnahoe relates that during the next several years after moving to West Virginia, he commuted to his law office in Los Angeles, California, for the sole purpose of closing up his law practice there, and in 1983 spent nearly six months in California finally winding his law practice down. He further relates that his intention then and now was to never practice law again, in California, West Virginia, or any other state. Accordingly, respondent Donnahoe, by his request of February 15, 1984, transferred to inactive membership in the State Bar of California.[2] Additionally, he is not now admitted, nor

---

1. West Virginia Code § 3–1–45 (1979 Replacement Vol.) provides, in relevant part, that:

 Any officer or person, upon whom any duty is devolved by this chapter, may be compelled to perform the same by writ of mandamus.... A mandamus shall lie from the supreme court of appeals ... to compel any officer herein to do and perform legally any duty herein required of him.

 The pertinent statutory duties imposed upon the Secretary of State and county ballot commissioners are contained in West Virginia Code §§ 3–1–19 to –21, 3–1A–6, and 3–5–18 (1979 Replacement Vol. & Supp.1984).

2. California law provides that all persons admitted and licensed to practice law in that state must be members of the California State Bar, and that only active members shall be entitled to practice law. *See* Cal.Bus. & Prof.Code §§ 6002 to 6006, 6125 and 6141 (West 1974 & Supp.1984). West Virginia provisions are similar. *See* Constitution of the West Virginia State Bar, article III; By-laws of the West Virginia State Bar, articles I to III; and West Virginia Code §§ 30–2–4 (1980 Replacement Vol.) and 51–1–4a (1981 Replacement Vol.).

has he ever sought admission to the practice of law in West Virginia or membership in the West Virginia State Bar.

Therefore, the primary issue presented in this proceeding is whether article VIII, § 7 of the West Virginia Constitution requires candidates for circuit judge to have been duly admitted to practice law in West Virginia for five years, or whether admission to the practice of law anywhere for five years is sufficient.[3]

■ We recognize that where "a constitutional provision is clear in its terms, and the intention of the electorate is clearly embraced in the language of the provision itself, this Court must apply and not interpret the provision." Syl. pt. 1, *State ex rel. Trent v. Sims,* 138 W.Va. 244, 77 S.E.2d 122 (1953). We reject, however, respondent candidate's contention that the phrase "admitted to practice law for at least five years" is unambiguous. Only if the phrase read, for example, "admitted to practice law *in any state* for at least five years" would its meaning, under the terms of the respondent's argument, be unambiguous. The provision as written is, therefore, subject to application by the Court according to the common and recognized rules of construction. The paramount principle is that "[t]he object of construction, as applied to a written constitution, is *to give effect to the intent of the people in adopting it.*" *Diamond v. Parkersburg-Aetna Corporation,* 146 W.Va. 543, 555, 122 S.E.2d 436, 443 (1961) (emphasis in original).[4]

Although there are no West Virginia cases construing the language involved here, *State ex rel. Summerfield v. Maxwell,* 148 W.Va. 535, 135 S.E.2d 741 (1964) is instructive. In that case, this Court was presented with a similar issue involving whether a non-lawyer was eligible for the office of prosecuting attorney in the absence of a specific constitutional or statutory provision mandating that county prosecutors must be lawyers, licensed to practice in West Virginia. Noting both the strong policy reasons discussed in similar cases of other jurisdictions, and the statutory duties imposed on a prosecuting attorney in this State, this Court held that "such official must be an attorney licensed to practice his profession in this State." *State ex rel. Summerfield v. Maxwell,* 148 W.Va. at 549, 135 S.E.2d at 750. *See also State ex rel. Dostert v. Riggleman,* 155 W.Va. 808, 187 S.E.2d 591 (1972).

A case cited with approval in *Summerfield,* also sheds some light on this matter. In *State v. Russell,* 83 Wis. 330, 53 N.W. 441 (1892), the Supreme Court of Wisconsin interpreted a state statute which provided that: "the circuit judges, within their respective circuits, are hereby authorized, in their discretion, to appoint *counsel* to assist the district attorney...." (emphasis added). There were no qualifying terms pertaining to the word "counsel." This was an appeal of a criminal conviction where the appointed "counsel" was a Minnesota attorney, a "distinguished crimi-

---

3. The provision at issue is part of the "Judicial Reorganization Amendment" submitted to the people of West Virginia a decade ago. *See* 1974 W.Va.Acts 946. The electorate ratified this amendment in the general election of November 5, 1974, and thereby rewrote the entire article on the judiciary. Under the original article and former amendments thereto, the requirement of being "admitted to practice of law" or language of similar import was not present. *See* West Virginia Constitution of 1872, article VIII; and amendments, 1879 W.Va.Acts 49. Nor was there any such requirement under our former constitution. *See* West Virginia Constitution of 1861–63, article VI.

4. *See also May v. Topping,* 65 W.Va. 656, 660, 64 S.E. 848, 850 (1909):

A Constitution is made for the people and by the people. The interpretation that should be

given it is that which reasonable minds, the great mass of people themselves, would give it; "for as the Constitution does not derive its force from the convention which framed, but from the people who ratified it, the intent to be arrived at is that of the people, and it is not to be supposed that they have looked for any dark or obtuse meaning in the words employed, but rather that they have accepted them in the sense most obvious to the common understanding, and ratified the instrument in the belief that that was the sense designed to be conveyed" (quoting from C. Cooley, *Constitutional Limitations* 81).

*See also Appalachian Power Company v. County Court of Mercer County,* 146 W.Va. 118, 118 S.E.2d 531 (1961).

nal lawyer of St. Paul." *Russell*, 83 Wis. at 331, 53 N.W. at 441. He was, however, not a resident of Wisconsin or a member of the Wisconsin bar. The court held that the proper meaning accorded the word "counsel" in the statute required that such persons "must be a member of the bar of this state." *Russell*, 83 Wis. at 335, 53 N.W. at 442.

If prosecuting attorneys must meet these types of intraterritorial qualifications despite the absence of clear constitutional or statutory provisions mandating such qualifications, then the judges these prosecuting attorneys are to appear before should be at least similarly qualified despite similar constitutional and statutory silence. Such qualifications are implicit in the constitutional and statutory structure and function of the judicial and quasi-judicial offices in-

volved. The legal powers and obligations exercised by and imposed upon these officers, by their very nature, presume such unspoken qualifications.

In addition to West Virginia, forty-seven other states expressly require that their judges of courts of record be licensed attorneys at law; and of those forty-seven, forty-five expressly provide or have been construed to require that their judges must be licensed attorneys of that particular state.[5] Moreover, in addition to West Virginia, twenty-five other states expressly require a certain number of years of experience as a licensed attorney in order to be eligible for the office of appellate or trial court judge; and of those twenty-five, twenty-two expressly provide or have been construed to require that this experience must be acquired in that particular state.[6] To con-

5. *See* Ala. Const. amend. 328, § 6.07; Alaska Const. art. IV, § 4; Ariz. Const. art. VI, § 22; Cal. Const. art. VI, § 15; Colo. Const. art. VI, §§ 8, 11; Conn.Gen.Stat.Ann. § 51–47(b) (West Supp.1984); Fla. Const. art. V, § 8; Ga. Const. art. VI, § 7, ¶ II, *construed in Littlejohn v. Cleland*, 251 Ga. 597, 308 S.E.2d 186 (1983); Hawaii Const. art. VI, § 3, *construed in Application of West*, 61 Hawaii 112, 595 P.2d 1080 (1979); Idaho Const. art. V, § 23; Idaho Code §§ 34–615, 34–616(2) (1981); Ill. Const. art. VI, § 11; Ind. Const. art. VII, § 10; Ind.Code Ann. §§ 33–10.5–4–1, 33–11.6–3–2, 33–13–9–1 (Burns 1975 & Supp.1984); Iowa Const. art. V, § 18; Iowa Code Ann. § 602.1603 (West Supp.1984); Kan. Const. art. III, § 7; Kan.Stat.Ann. §§ 20–105, 20–334 (1981); Ky.Const. § 122; La. Const. art. V, § 24; Me.Rev.Stat.Ann. tit. 4, § 157 (1979) (district judges); Md. Const. art. IV, § 2; Mich. Const. art. VI, § 19; Mich.Comp.Laws.Ann. §§ 168.391, .409, .411, .431 (West 1967 & Supp. 1984); Minn. Const. art. VI, § 5, *construed in In re Daly*, 294 Minn. 351, 200 N.W.2d 913 (1972), *cert. denied sub. nom., Daly v. McCarthy*, 409 U.S. 1041, 93 S.Ct. 528, 34 L.Ed.2d 491 (1972) and *In re Scarrella*, 300 Minn. 500, 221 N.W.2d 562 (1974) (construing former provision with identical qualifying language); Miss. Const. art. VI, § 150 (supreme court); Mo. Const. art. V, § 21; Mont. Const. art. VII, § 9; Mont.Code Ann. §§ 3–2–102, 3–5–202 (1983); Neb.Rev.Stat. §§ 24–202, 24–301 (1979); Nev.Rev.Stat. §§ 2.020, 3.060 (1983); N.H.Rev.Stat.Ann. § 502–A:3 (1983) (district court); N.J. Const. art. VI, § 6, ¶ 2; N.M. Const. art. VI, §§ 8, 14, 28; N.Y. Const. art. VI, § 20; N.C. Const. art. IV, § 22; N.D.Cent.Code § 27–11–01 (Supp. 1983); Ohio Rev.Code Ann. §§ 2301.01, 2501.02, 2503.01 (Page 1981); Okla. Const. art. VII, §§ 2, 8; Okla.Stat.Ann. tit. 20, § 31 (West 1962); Or. Rev.Stat. §§ 2.020(2), 46.610 (1983); Pa. Const.

art. V, § 12; 42 Pa.Cons.Stat.Ann. § 3101 (Purdon 1981); R.I.Gen.Laws § 8–8–7 (Supp.1983) (district court); S.D. Const. art. V, § 6; Tenn. Code Ann. § 17–1–106 (Supp.1984); Tex. Const. art. V, §§ 2, 4, 6, 7; Utah Const. art. VIII, §§ 2, 5; 1984 Utah Laws S.J.Res.No. 1 (proposed constitutional amendments to article VIII, *see* § 7); Vt.Stat.Ann. tit. 4, § 602(b) (Supp.1983); Va. Const. art. VI, § 7; Wash. Const. art. IV, § 17; Wis. Const. art. VII, § 24; Wyo.Stat. § 5–1–101 (1983). The two states which do not expressly require judges to be licensed attorneys are Delaware and Massachusetts. The provisions of two states which require judges to be licensed attorneys but are silent as to whether in-state licensing is contemplated are those of Arkansas and South Carolina. *See* Ark. Const. art. VII, §§ 6, 16; S.C. Const. art. V, § 11.

6. *See* Ariz. Const. art. VI, § 22; Cal. Const. art. VI, § 15; Colo. Const. art. VI, §§ 8, 11; Fla. Const. art. V, § 8; Ga. Const. art. VI, § 7, ¶ II, *construed in Littlejohn v. Cleland*, 251 Ga. 597, 308 S.E.2d 186 (1983); Hawaii Const. art. VI, § 3; *construed in Application of West*, 61 Hawaii 112, 595 P.2d 1080 (1979); Ind. Const. art. VII, § 10 (supreme court and court of appeals); Kan.Stat.Ann. §§ 20–105, 20–334 (1981); La. Const. art. V, § 24; Miss. Const. art. VI, § 150 (supreme court); Mont. Const. art. VII, § 9; Mont.Code Ann. §§ 3–2–102, 3–5–202 (1983); Neb.Rev.Stat. §§ 24–202, 24–301 (1979); N.J. Const. art. VI, § 6, ¶ 2; N.M. Const. art. VI, §§ 8, 14, 28; N.Y. Const. art. VI, § 20; Ohio Rev.Code Ann. §§ 2301.01, 2501.02, 2503.01 (Page 1981); Okla. Const. art. VII, §§ 2, 8; Okla. Stat.Ann. tit. 20, § 31 (West 1962); Tex. Const. art. V, §§ 2, 4, 6, 7; Vt.Stat.Ann. tit. 4, § 602(b) (Supp.1983); Va. Const. art. VI, § 7; Wis. Const. art. VII, § 24; Wyo.Stat. § 5–1–101 (1983). The

strue this State's similar provision in like fashion does not exhibit a narrow and provincial view of the law. Rather, it recognizes that the regulation of the practice of law and the judiciary is traditionally and inherently intraterritorial. Phrases such as the formerly common constitutional requirement that judges must be "learned in the law" have been interpreted in this fashion. *See Petition of Teigen*, 221 N.W.2d 94 (N.D.1974); *In re Daly*, 294 Minn. 351, 200 N.W.2d 913 (1972), *cert. denied sub. nom., Daly v. McCarthy*, 409 U.S. 1041, 93 S.Ct. 528, 34 L.Ed.2d 491 (1972); *In re Scarrella*, 300 Minn. 500, 221 N.W.2d 562 (1974). *See generally* Annot., 71 A.L.R.3d 498 (1976).

In *Petition of Teigen, supra,* the Supreme Court of North Dakota was asked to construe section 94 of the North Dakota Constitution which provides that: "[n]o person shall be eligible to the office of judge of the supreme court unless he be learned in the law...." The court held that "the phrase 'learned in the law' is synonymous with and means 'admitted to the bar' or 'admitted to practice' by the Supreme Court of our State." 221 N.W.2d at 98. The North Dakota court's reasoning for this interpretation is well stated and directly applicable to the interpretation of the meaning of the provision at issue in the case at hand.

> From a practical standpoint, if we are to continue our practice of examining through the auspices of the State Bar Board those who have received Law Degrees from the finest law schools in this country to determine their qualifications to practice law before the highest court of this State, it would seem to follow that we must require that those who seek to sit on the highest court of the State demonstrate first that they are qualified. Under our statutes and under the rules of our court, no one may practice law as an attorney and counselor at law before the State Supreme Court or any other court of record of this State unless he

has first been admitted to bar or to the practice of law by the Supreme Court of this State.

> By this opinion, we hold that one must first be admitted to the bar or to the practice of law by this court before one may have his name placed on the ballot as a candidate for the office of judge of this court.

221 N.W.2d at 99.

It is fundamental that both federal and state power is limited to its constitutional framework. The organic law embodied within each state constitution runs with the territorial jurisdiction of the state. It is beyond the jurisdiction of another state to determine the necessary qualifications for admission to the practice of law in West Virginia, and vice versa. Statutes and constitutions "are to be construed and considered as relating to people and institutions within the state ... as intraterritorial and not extraterritorial." *State ex rel. Fugina v. Pierce*, 191 Wis. 1, 5, 209 N.W. 693, 694 (1926).

Furthermore, a recent decision by the Supreme Court of Georgia directly supports the conclusion that the intended scope of our constitutional provision is intraterritorial. In *Littlejohn v. Cleland*, 251 Ga. 597, 308 S.E.2d 186 (1983), with both facts and a constitutional requirement remarkably similar to this case, the Court disposed of the issue as follows:

> The remaining question is whether the court erred in concluding that an individual must be a member of the State Bar of Georgia in order to be qualified to run for office as a Justice of the Supreme Court of Georgia. The Constitution of Georgia of 1976, Art. VI, Sec. XIII, Para. I (Code Ann. § 2–4201), provided that "[n]o person shall be a Justice of the Supreme Court ... unless, at the time of his election, he shall ... have practiced law for seven years." The State Bar of Georgia is an arm of this Court, and we have held that only those persons who

provisions of three states which require judges to have a certain number of years of experience as a licensed attorney but are silent as to whether in-state experience is contemplated are those of Arkansas, Kentucky and South Carolina. *See* Ark. Const. art. VIII, § 6; Ky.Const. § 122; S.C. Const. art. V, § 11.

are members of the State Bar of Georgia may practice law. Since a person may not practice law unless he or she is a member of the State Bar, a person cannot qualify for an office requiring law practice unless he or she is a member of the State Bar. Inasmuch as the court found that Littlejohn is not now nor has he ever been a member of the State Bar of Georgia, it is clear that he does not meet the constitutional requirement to seek or hold the position of Associate Justice of the Supreme Court of Georgia. (citations omitted).

In *Whitmer v. Thurman*, 241 Ga. 569, 247 S.E.2d 104 (1978), relied upon in *Littlejohn*, the Georgia Supreme Court also determined that the constitutional requirement that district attorneys must have "practiced law for three years" meant practice of law "as an active member of the State Bar of Georgia in good standing." *Whitmer*, 241 Ga. at 570, 247 S.E.2d at 106 (quoting *Wallace v. Wallace*, 225 Ga. 102, 166 S.E.2d 718 (1969)). The court further held that this requirement could not be partially or wholly satisfied with legal prac-

tice in another state.[7] *See also Application of West*, 61 Hawaii 112, 595 P.2d 1080 (1979).

We therefore hold that the phrase "admitted to practice law for at least five years," contained in West Virginia Constitution art. VIII, § 7 imposes licensing and experiential requirements for persons elected to the office of circuit judge which may only be satisfied by unqualified[8] admission to the practice of law in this State for the requisite period.[9] "Admitted[10] to practice" means permitted[11] to practice before the official body[12] empowered to regulate the practice of law in this State for the minimum five-year period provided in article VIII, § 7. This requires uninterrupted permission to practice in the State for such period. *See* Constitution of the West Virginia State Bar, art. III; By-laws of the West Virginia State Bar, arts. I to III. *See also* Syl. pt. 3, *Phelps v. Shanahan*, 210 Kan. 605, 502 P.2d 768 (1972).

### III

Our inquiry, however, does not end with the interpretation of the requirements

---

**7.** The observations of Justice Hill in *Whitmer* provide further support for intraterritorial construction of the provision at issue here.

> Article VI, Sec. XIII, Par. I (Code Ann. § 2–4201) of the Constitution of 1976 provides that a district attorney "... shall have practiced law for three years next preceding his election." This requirement must be interpreted to mean the practice of law in Georgia. If it were not so, then the practice of law in Kuala Lampur, Malaysia, would suffice. If practice of law in Kuala Lampur were to satisfy the requirement, then the requirement would have no reasonable basis and would be invalid as an unreasonable impairment of the right to hold public office in violation of the 14th Amendment. To prevent the requirement from being so overbroad as to be invalid, it must be interpreted to be limited to the practice of law in Georgia.

*Whitmer v. Thurman*, 241 Ga. at 571–72, 247 S.E.2d at 106 (Hill, J., concurring specially).

**8.** For example, this does not include limited-purpose admissions such as those covered by Rules 6.000 and 7.000 of the *Code of Rules for Admission to the Practice of Law*, West Virginia Code, Vol. 1A (1982 Replacement Vol.).

**9.** We note that judges must also be at least thirty years of age and a citizen of the State for at least five years prior to their election. West Virginia Constitution art. IV, § 4. These article

IV requirements are not in conflict with the additional requirements under article VIII, and, therefore, are not superseded by the article VIII provisions. *See* West Virginia Constitution art. VIII, § 15.

**10.** *See* Webster's Third New International Dictionary (Unabridged 1970): "admit *vb* ... 1 a: permit ... 2 a: allow, permit."

**11.** *See* Webster's Third New International Dictionary (Unabridged 1970): "permit *vb* ... 2: admit."

**12.** The regulatory power over the practice of law in West Virginia is conferred upon the Supreme Court of Appeals. *See* West Virginia Constitution art. VIII, § 1. *See also State ex rel. Quelch v. Daugherty*, 172 W.Va. 422, 306 S.E.2d 233 (1983); *Lane v. West Virginia State Board of Bar Examiners*, 170 W.Va. 583, 295 S.E.2d 670 (1982); *State ex rel. Askin v. Dostert*, 170 W.Va. 562, 295 S.E.2d 271 (1982); *Carey v. Dostert*, 170 W.Va. 334, 294 S.E.2d 137 (1982); *State ex rel. Frieson v. Isner*, 168 W.Va. 758, 285 S.E.2d 641 (1981); *Pushinsky v. West Virginia Board of Law Examiners*, 164 W.Va. 736, 266 S.E.2d 444 (1980); *State ex rel. Preissler v. Dostert*, 163 W.Va. 719, 260 S.E.2d 279 (1979); *Partain v. Oakley*, 159 W.Va. 805, 227 S.E.2d 314 (1976); *West Virginia State Bar v. Earley*, 144 W.Va. 504, 109 S.E.2d 420 (1959).

of article VIII, § 7. In this State, the right to become a candidate for public office is a valuable and fundamental right protected under the equal protection provisions of both the federal and state constitutions. *See White v. Manchin*, 173 W.Va. 526, 318 S.E.2d 470, 488 (1984), and cases cited therein.[13] In order to satisfy the constitutional protections of this fundamental right, restrictions upon eligibility must serve a compelling state interest. *State ex rel. Piccirillo v. City of Follansbee*, 160 W.Va. 329, 333, 233 S.E.2d 419, 423 (1977). Therefore, we must examine article VIII, § 7, which requires candidates for circuit judge to have been attorneys licensed by this State for at least five years before their election, in order to determine whether it serves such a compelling state interest.[14]

As previously noted, similar experiential requirements for judges are common. The purpose for such requirements is unquestionably clear. They are intended to insure not only that judges are competent in the law, but that they are reasonably familiar with the law of the jurisdiction to which they are elected. While it may be axiomatic that judges are elected to interpret and uphold the law, due process demands a high level of jurisdictional competence and integrity in that endeavor. Requirements or restrictions affecting eligibility for judicial office that reasonably strive to meet such valid public purposes do not impose impermissible barriers to such offices. Furthermore, a state's particular interest in maintaining the integrity of its judicial system can support restrictions which could not survive constitutional scrutiny if applied to other types of offices. *Clements v. Fashing*, 457 U.S. 957, 968, 102 S.Ct. 2836, 2846, 73 L.Ed.2d 508, 519 (1982).

■ Therefore, we hold that the requirement contained in West Virginia Constitution art. VIII, § 7, that candidates for the office of circuit judge must have been ad-mitted to the practice of law in the State for five years prior to their election advances the State's compelling interest in securing and maintaining a judiciary well qualified in the law of the jurisdiction. *See Bullock v. State of Minnesota*, 611 F.2d 258 (8th Cir.1979) (similarly constituted provision held to serve compelling state interest); *Kraft v. Harris*, 18 Wash.App. 432, 568 P.2d 828 (1977) (city charter provision that a corporation counsel candidate must have been practicing law in City of Seattle at least four years held to be reasonable requirement). *See also Trafelet v. Thompson*, 594 F.2d 623, 627 (7th Cir.1979), *cert. denied*, 444 U.S. 906, 100 S.Ct. 219, 62 L.Ed.2d 142 (1979) (equal protection clause does not prohibit adoption of more rigorous standards for assuring excellence in the judiciary than for other elective offices).

## IV

For the foregoing reasons, we grant a writ of mandamus commanding respondent Secretary of State A. James Manchin to withhold or withdraw his certification of candidacy of respondent George Douglas Donnahoe, commanding the respondent ballot commissioners of Ritchie, Doddridge and Pleasants Counties to strike, omit, or otherwise remove the name of George Douglas Donnahoe from the official ballots, ballot cards, or ballot labels, as the case may be, to be used in the general election to be conducted on November 6, 1984, as Republican candidate for the office of Circuit Judge for the Third Judicial Circuit; and commanding respondent Secretary of State A. James Manchin, under West Virginia Code § 3–1A–6 (1979 Replacement Vol.), to direct all election officials, county commissioners, clerks of county commissioners, clerks of circuit courts, boards of ballot commissioners, election commissioners, and poll clerks associated with the administration of the general elec-

13. Other state courts have held similarly. *See, e.g., Thompson v. Mellon*, 9 Cal.3d 96, 107 Cal. Rptr. 20, 507 P.2d 628 (1973); *Gangemi v. Rosengard*, 44 N.J. 166, 207 A.2d 665 (1965). *But see Bullock v. Carter*, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972).

14. Durational residency requirements for judges are found in West Virginia Constitution art. IV, § 4. *See* note 9, *supra*. We note that we recently upheld a one-year durational residency requirement in *White v. Manchin*, 173 W.Va. at 526, 318 S.E.2d at 470.

tion in the Third Judicial Circuit to disregard and refrain from tallying, tabulating, certifying, or returning any vote cast, absentee, write-in, or otherwise, for respondent George Douglas Donnahoe.

Writ granted.