338 S.E.2d 207

**Joan E. BRAMMER**

v.

**Ronald TAYLOR, Geraldine Short, and Gulf National Bank.**

**No. 16577.**

Supreme Court of Appeals of West Virginia.

Dec. 12, 1985.

C. Elton Byron, Jr., W.A. Thornhill, III, Beckley, for appellant.

Ashworth & Kirkpatrick, Robert J. Ashworth, H.L. Kirkpatrick, Beckley, for appellee.

McHUGH, Justice.

This case is before this Court upon appeal from a final order of the Circuit Court of Raleigh County, West Virginia [hereinafter, "the trial court"]. In that order the trial court set aside an earlier final order in favor of defendants/appellants.

This case involves a lost legacy under an invalidly attested codicil. "An old proverb warns us to take heed lest we 'walk into a well from looking at the stars.' To show why [this case, although factually unique, is not as legally complicated as the parties and the trial court have viewed it, we] must bring these deliberations down to earth by a [rather] long recital of facts." *Terminiello v. City of Chicago*, 337 U.S. 1, 14, 69 S.Ct. 894, 900, 93 L.Ed. 1131, 1139 (1949) (Jackson, J., dissenting).

## I. *Facts*

Joan Brammer [hereinafter, "plaintiff"] accompanied her business associate, Howard E. Gillespie [hereinafter, "the decedent"], to the Gulf National Bank [hereinafter, "defendant bank"] at or near the Town of Sophia, Raleigh County, West Virginia, where the decedent was to conduct a banking transaction, specifically, the renewal of a promissory note. The decedent was a very substantial depositor at the bank. About two weeks prior to this, the decedent had informed Ronald Taylor [hereinafter, "defendant Taylor"], the bank's chief executive officer, that he (the decedent) would, at some unspecified time in the near future, be coming to the bank to renew the note and, possibly, to amend his will. Defendant Taylor, who is not an attorney, immediately thereafter called the attorney who had prepared the decedent's will. There was testimony, to which no objection was made, that the attorney instructed defendant Taylor to tell the decedent, whenever he decided to amend his will, that it was dangerous to attempt to amend the will and that it would be better for an attorney to revoke the existing,

short will of the decedent by preparing a new one.

On the day that the decedent renewed the note, he appeared at the bank at closing time. The only persons present at the bank were: the decedent, plaintiff, defendant Taylor, and Geraldine Short, an assistant vice-president of defendant bank (hereinafter, "defendant Short"). After renewing the note, and while sitting in or near defendant Taylor's office, the decedent suddenly asked defendant Short to take some dictation. In an area outside defendant Taylor's office, defendant Short typed a purported codicil to the decedent's will, in which he bequeathed $70,000.00 to plaintiff. After the decedent retrieved the purported codicil from defendant Short, who had typed it verbatim per his dictation, the decedent signed the purported codicil. Defendant Taylor was named therein as executor. Defendant Taylor then relayed to the decedent the message from the attorney that he ought to have a lawyer prepare the codicil. The decedent replied, however, that he did not have time to get a lawyer to prepare the codicil. The decedent then asked defendant Taylor to have the codicil witnessed and immediately left the bank with plaintiff. During all of this transaction, plaintiff remained completely silent, even though the evidence was undisputed that she was present when defendant Taylor cautioned the decedent that he should contact a lawyer to prepare the codicil. This transaction occurred on a Friday, June 5.

Three days later, on Monday, June 8, defendant bank, by defendant Taylor, had two other bank employees subscribe the codicil as purported attesting witnesses. Defendant Short notarized the witnesses' signatures as if they had signed on June 5. The decedent was not present at the bank when the witnesses subscribed the purported codicil.

■ The decedent died on June 13. When the probate court (in North Carolina where the decedent resided at the time of his death) learned of the true facts of the execution of the will, by way of affidavits of the subscribing witnesses, the purported codicil was denied probate.[1]

Thereafter, plaintiff brought this tort action against defendant bank, defendant Taylor, and, by amended complaint, also

---

1. The applicable North Carolina statute on execution and attestation of a will is *N.C.Gen.Stat.* § 31–3.3 [1953], which provides as follows:

(a) An attested written will is a written will signed by the testator and attested by at least two competent witnesses as provided by this section.

(b) The testator must, with intent to sign the will, do so by signing the will himself or by having someone else in the testator's presence and at his direction sign the testator's name thereon.

(c) The testator must signify to the attesting witnesses that the instrument is his instrument by signing it in their presence *or by acknowledging to them his signature previously affixed thereto,* either of which may be done before the attesting witnesses separately.

(d) The attesting witnesses must sign the will in the presence of the testator but need not sign in the presence of each other. (emphasis added)

Notice that the testator need not sign the will in the presence of the attesting witnesses but may acknowledge to them his previously affixed signature. *W.Va.Code,* 41–1–3 [1931] provides in similar language as follows:

No will shall be valid unless it be in writing and signed by the testator, or by some other person in his presence and by his direction, in such manner as to make it manifest that the name is intended as a signature; and moreover, unless it be wholly in the handwriting of the testator, the signature shall be made *or the will acknowledged by him* in the presence of at least two competent witnesses, present at the same time; and such witnesses shall subscribe the will in the presence of the testator, and of each other, but no form of attestation shall be necessary. (emphasis added)

Both the North Carolina and West Virginia statutes require the attesting witnesses to "sign" or to "subscribe" the will in the presence of the testator. Nonetheless, the witnesses' *acknowledgement* of their signatures (or, in North Carolina, the *acknowledgement* of each witness of his signature separately) in the presence of the testator (and, in West Virginia, in the presence of each other) is tantamount to and will be deemed a "signing" or "subscribing" in the presence of those persons. *Wade v. Wade,* 119 W. Va. 596, 195 S.E. 339 (1938). Thus, in the case now before us, the attempted codicil became defectively attested when the testator died before he had acknowledged his signature to each of the purported attesting witnesses and each of them had acknowledged their respective signatures to him, as required by the North Carolina statute.

against defendant Short, to recover the value of the lost legacy. Defendant Short was dismissed before trial as a defendant on the grounds that she was a mere scribe and, as a notary, did not back-date the attestation with malicious, impure or corrupt motives. The estate of the decedent or his personal representative was not made a party as a defendant.

## II. *Trial Court Proceedings*

There were two theories of recovery: (1) the unauthorized practice of law by defendants and (2) negligence of defendants in handling the execution of the purported codicil. Denying defendant bank's and defendant Taylor's motions for directed verdict, the trial court submitted the case to the jury on both theories of recovery. The predominant emphasis at trial was, however, on the theory of the alleged unauthorized practice of law.

During colloquy with counsel on the directed verdict motions, the trial court stated to counsel that he would not allow the question of plaintiff's own contributory negligence to go to the jury, but he believed that plaintiff's case as intended beneficiary "must rise and fall on what her testator did" and "the jury must consider his actions and not hers." The jury was instructed to consider and determine the amount of any negligence of the decedent, as well as that of defendants. The trial court, over defendant bank's objection, refused to instruct the jury that the negligence of plaintiff was to be considered and determined.

In its special verdict, the jury found the decedent guilty of 70% of the fault and defendants guilty of 30% of the fault. The trial court subsequently entered a judgment order for defendants.

Thereafter, in what may fairly be described as a continuation of unnecessary confusion, plaintiff moved for a new trial or, alternatively, under *W.Va.R.Civ.P.* 60(b)(1), to set aside the judgment due to mistake. The ground principally relied upon was that plaintiff herself had not been found guilty of any negligence by the jury and, therefore, under the comparative negligence rule announced in *Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979), was the prevailing party vis-a-vis the defendants, who had been found guilty of 30% of the fault, which was more than plaintiff's own share of the fault (zero).

The trial court agreed and granted plaintiff's Rule 60(b)(1) motion to set aside the judgment and for entry of judgment for plaintiff on the reasoning that the jury's verdict was, under *Bradley*, actually for plaintiff. The trial court, in its opinion letter accompanying its final order stated that it had not submitted the case to the jury with the decedent's negligence being imputed to plaintiff.

## III. *Assignments of Error*

On this appeal, defendants/appellants assign as error:

(1) the trial court's setting aside the original judgment for defendants based upon its subsequent interpretation of the jury verdict in light of *Bradley;* and

(2) the trial court's ruling that plaintiff's comparative negligence was not a defense. We hold that this assignment of error has merit. Accordingly, we reverse the final order of the trial court and remand for a new trial.

▪ Appellants rely upon wrongful death cases to support imputation of the decedent's comparative negligence to the intended beneficiary.[2] Appellants also as-

---

**2.** This reliance is misplaced. A wrongful death case is not analogous to a case involving an intended beneficiary's claim of alleged negligence in the preparation or supervision of the execution of a will. In a wrongful death case the imputation of the comparative negligence of the decedent to a distributee is provided by the wrongful death statute itself, *W.Va. Code*, 55–7–5 [1931], since the action does not lie thereunder unless the decedent could have maintained an action for the injuries. Thus, for the purpose of imputing negligence, the decedent's personal representative's action for the benefit of a distributee is derivative and rises and falls with what the decedent's right to recovery would have been. On the other hand, an intended beneficiary under a defectively executed will does not have a derivative action against the person(s) supervising the execution but, instead, an independent action in his or her own right for the value of the legacy lost by him or her as

sert that the lawyers argued to the jury on the basis of imputed contributory negligence and contend that the jury was instructed on that basis. To allow the trial court to disregard a theory included in the instructions to the jury would, they urge, violate the principle of not giving misleading or confusing instructions.[3]

Plaintiff/appellee cross-assigns as error:

(1) the trial court's exclusion of evidence of prior wills of the decedent and of plaintiff having been executed (signed and attested) at the bank;[4]

(2) the trial court's refusal to give certain instructions;[5]

(3) the trial court's refusal to submit the case to the jury on a negligence *per se* basis for the alleged unauthorized practice of law;[6] and

(4) the trial court's dismissal before trial of the notary public, defendant Short, who typed the purported codicil. This cross-assignment of error has some merit. As discussed below, merely typing another person's will or attempted will is clearly not practicing law. Like defendant Taylor, however, defendant Short may have assumed a duty to supervise the execution of the codicil or to contact a lawyer about the same. The jury is to consider and determine her negligence, if any, on remand. Defendant bank, as her employer, would be responsible, under *respondeat superior*, for any negligence on her part found by the jury.

The issue of the trial court's dismissal of defendant Short is not before us. She was not represented by counsel for defendant bank, either at trial or on this appeal, but was represented by her own counsel who did not participate in this appeal.

## IV. *The practice of law*

The first issue in this case on remand would be whether defendants were engaged in the unauthorized practice of law. It must be determined whether, under the unauthorized practice of law theory of recovery, there was a breach of a duty owed by defendants to the decedent and to plaintiff not to engage in the unauthorized practice of law, the breach of which duty proximately contributed to the legacy being invalidated by improper attestation of the attempted codicil.

This Court has promulgated a definition of the practice of law, pursuant to our

the very person for whom it was intended. The decedent's estate would have a separate action for recovery of attorney's or other fees paid by the decedent for preparation of the will. *See, e.g., Heyer v. Flaig,* 70 Cal.2d 223, 74 Cal.Rptr. 225, 449 P.2d 161 (1969). *See generally* annot., 45 A.L.R.3d 1181 (1972); annot., 65 A.L.R.2d 1363 (1959); 7 Am.Jur.2d *Attorneys at Law* § 236 (1980).

For a discussion of the very limited number of agency-type relationships in which the negligence of another person is by legal fiction imputed to a plaintiff *see generally Prosser And Keeton On The Law Of Torts* § 74 (W. Keeton 5th ed. 1984); annot., 53 A.L.R.3d 664 (1973); 58 Am.Jur.2d *Negligence* §§ 462–64 (1971). A testator is not an agent subject to the control of an intended beneficiary under the will or attempted will, for the purpose of imputing to the intended beneficiary the negligence of the testator in executing or preparing the will. *Cf.* 2 S. Williston, *A Treatise on the Law of Contracts* § 352 (W. Jaeger 3d ed. 1959) (the promisee in a contract is not the agent of the third-party beneficiary unless the agency is established as a matter of fact; thus, a testator, as promisee of a contract to have a will or codicil prepared or its execution supervised, is not presumed to be the agent of the intended beneficiary under the will

or codicil, who would be the third-party beneficiary of such a contract).

**3.** It is not necessary to discuss this assignment of error. Imputing the decedent's negligence to plaintiff would not be proper for the reasons stated above at n. 2.

**4.** On remand plaintiff/appellee should be given the opportunity to show that these other wills were prepared, or their execution supervised, by defendants. On the other hand, merely acting as attesting witnesses would be insufficient to impose a common law duty on defendants to supervise the execution of a will or codicil.

**5.** Plaintiff/appellee waived this cross-assignment of error by not arguing the same in her brief. *See State v. Flint,* 171 W.Va. 676, 679, 301 S.E.2d 765, 768 n. 1 (1983); syl. pt. 6, *Addair v. Bryant,* 168 W.Va. 306, 307, 284 S.E.2d 374, 375 (1981).

**6.** This cross-assignment of error is without merit. In West Virginia, the well settled rule is that the violation of a statute is only *prima facie* evidence of negligence, not negligence *per se. Vandergrift v. Johnson,* 157 W.Va. 958, 961, 206 S.E.2d 515, 517 (1974). *See W.Va. Code,* 55–7–9 [1931].

"power to promulgate rules ... for all of the courts of the State relating to ... practice ...," *W. Va. Const.* art. VIII, § 3, and pursuant to the express provision of *W. Va. Code*, 51-1-4a(a) [1945] to promulgate rules defining the practice of law. This definition,[7] emphasizing the need for protection of the public from legal advice and representation from and by persons who are "unqualified and undisciplined," is to be read *in pari materia* with *W. Va. Code*, 30-2-4 [1931] and *W. Va. Code*, 30-2-5 [1972], which impose misdemeanor criminal penalties for the unauthorized practice of law by a natural person or by a corporation or association.

■ Drafting a will for another person, advising another person how to draft a will or supervising its execution are activities which constitute the practice of law. *See generally* annot., 22 A.L.R.3d 1112 (1968), especially § 3 thereof. Certainly such activities come within our definition of the practice of law, as they constitute the giving of advice to another person on a matter involving the application of legal principles to facts, purposes or desires, and they involve the preparation of legal instruments for another person.

■ On the other hand, merely typing a legal instrument drafted by another person or merely reducing the words of another person to writing does not constitute the preparation of a legal instrument and, thus, does not constitute the practice of law. *Mickel v. Murphy*, 147 Cal.App.2d 718, 305 P.2d 993 (1957), *overruled on other grounds, Biakanja v. Irving*, 49 Cal.2d 647, 320 P.2d 16 (1958). *Mickel* involved an action by an intended beneficiary under a defectively executed will against a notary public to recover the value of property which would have passed under the will to the plaintiff but for the alleged unlawful practice of law by the defendant notary. The facts in *Mickel* are similar to those here.

There is no allegation that defendant represented that he was an attorney or qualified to draw the will. There is no allegation that the defendant suggested or directed the disposition of the property of Henry Mickel or that Henry Mickel relied upon defendant to see that the will was witnessed as required by law ....

147 Cal.App.2d at 720, 305 P.2d at 995. On these facts the court concluded: "In the instant case it is not alleged that defendant acted other than as a [scribe] in the preparation of the will and no facts are alleged showing that it was defendant's duty under the circumstances to advise the decedent

7. Adopted in 1947 and last amended in 1961, our "Definition of the Practice of Law" is as follows (after a preamble reciting the importance of licensing and regulation of persons performing legal services):

In general, one is deemed to be practicing law whenever he or it furnishes to another advice or service *under circumstances which imply the possession of [or] use of legal knowledge and skill.*

More specifically but without purporting to formulate a precise and completely comprehensive definition of the practice of law or to prescribe limits to the scope of that activity, one is deemed to be practicing law whenever (1) one undertakes, with or without compensation and whether or not in connection with another activity, to *advise another in any matter involving the application of legal principles to facts, purposes or desires;* (2) one undertakes, with or without compensation and whether or not in connection with another activity, to *prepare for another legal instruments of any character;* or (3) one undertakes, with or without compensation and whether or not in connection with another

activity, to represent the interest of another before any judicial tribunal or officer, or to represent the interest of another before any executive or administrative tribunal, agency or officer otherwise than in the presentation of facts, figures or factual conclusions as distinguished from legal conclusions in respect to such facts and figures. (emphasis added) Vol. 1A, *W. Va. Code*, at 267-68 (1982 Repl.Vol.).

This Court has repeatedly emphasized that it has the exclusive regulatory power over the practice of law in this State. "The constitutional separation of powers, W.Va. Const. art. V, § 1, prohibits the legislature from regulating admission to practice and discipline of lawyers in contravention of rules of this Court. W.Va. Const. art. VIII, § 1." Syl., *State ex rel. Quelch v. Daugherty*, 172 W.Va. 422, 306 S.E.2d 233 (1983). *See also* syl. pt. 1, *Daily Gazette Co. v. Committee on Legal Ethics*, 174 W.Va. 359, 326 S.E.2d 705 (1984); *State ex rel. Haught v. Donnahoe*, 174 W.Va. 27, 33 n. 12, 321 S.E.2d 677, 683 n. 12 (1984) (collecting cases); *W. Va. Code*, 51-1-4a(e) [1945] (recognizing our inherent rule-making power).

that the will required 'attestation thereto of two witnesses.' " 147 Cal.App.2d at 721, 305 P.2d at 995.

■ In the case now before us, there was an allegation that the decedent reasonably relied upon defendants to supervise the execution of the codicil, based upon prior wills of the decedent and of plaintiff having been signed and attested at defendant bank. If defendants had acted not only as typists and attesting witnesses but had actually engaged in the unauthorized practice of law by supervising the execution of these prior wills, the jury might reasonably infer that defendants had engaged in the unauthorized practice of law by supervising the execution of the codicil in question in this case. If defendants had engaged in the unauthorized practice of law in this case, in violation of *W. Va. Code*, 30–2–4 [1931] and *W. Va. Code*, 30–2–5 [1972], they would be *prima facie* negligent in their supervision of the execution of the codicil, *see* n. 6, *supra*, and if such negligence proximately contributed to the invalidity of the codicil, defendants would be liable to plaintiff for the value of the legacy lost by invalidation of the codicil, unless plaintiff is barred from recovering from defendants by her own comparative negligence, if any. *See Kronzer v. First National Bank*, 305 Minn. 415, 421, 235 N.W.2d 187, 191 (1975).

### V. *Common law duty of care*

■ The second theory of recovery in this case was that of a breach of a common law duty of care. Even if defendants had not engaged in the unauthorized practice of law by supervising the execution of the codicil, they may still have assumed the obligation "to see that the will was witnessed as required by law," *Mickel, supra*, 147 Cal.App.2d at 720, 305 P.2d at 995, that is, by expressly or impliedly agreeing to consult an attorney at law for advice on how the codicil should be attested. The jury upon retrial, upon sufficient evidence, would have to decide whether defendants assumed such an obligation or, conversely, merely agreed to act as attesting witness-

es. "One who engages in affirmative conduct [such as agreeing to consult an attorney for advice on how a codicil should be attested], and thereafter realizes or should realize that such conduct has created an unreasonable risk of harm to another [if such advice is not timely obtained], is under a duty to exercise reasonable care to prevent the threatened harm [by obtaining timely advice]." Syl. pt. 2, *Robertson v. LeMaster*, 171 W.Va. 607, 301 S.E.2d 563 (1983).

### VI. *Plaintiff's comparative negligence*

While concentrating on the question of whether defendants were practicing law, the trial court totally ignored the conduct of one of the parties, specifically, the conduct of plaintiff.

■ Defendant bank offered an instruction which stated, in essence, that the jury was to consider and determine the extent of plaintiff's negligence, as well as that of the decedent and defendants. The trial court refused to give this instruction as offered and modified it to exclude the reference to plaintiff's negligence. The instruction as offered correctly stated the law, was supported by sufficient evidence and was not repetitious of any other instruction. It should, therefore, have been given. "An instruction is proper if it is a correct statement of the law and if there is sufficient evidence offered at trial to support it." *Jenrett v. Smith*, 173 W.Va. 325, 335, 315 S.E.2d 583, 592–93 (1983). " 'Where [in a trial by jury] there is competent evidence tending to support a pertinent theory in the case, it is the duty of the trial court to give an instruction presenting such theory when requested to do so.' " *McAllister v. Weirton Hospital Co.*, 173 W.Va. 75, 81, 312 S.E.2d 738, 744 (1983) (citations omitted).

■ This Court held in syllabus point 3 of *Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979): "A party is not barred from recovering damages in *a tort action* so long as *his* negligence *or fault* does not equal or ex-

ceed the combined negligence *or fault* of the other parties *involved* in the accident." (emphasis added) [8] Clearly, under this principle, the question of the negligence of plaintiff in this particular case should have been submitted to the jury. The uncontroverted evidence is that plaintiff was present when defendant Taylor cautioned the decedent to get a lawyer to prepare the codicil. Furthermore, despite hearing this admonishment, plaintiff apparently did not contact a lawyer about the codicil. Thus, in this unusual case, the jury could reasonably find that plaintiff's inaction of not contacting a lawyer and not urging the decedent to contact a lawyer for advice on the preparation and execution of the codicil proximately contributed to the defect in the attestation of the codicil. Under these circumstances, we hold that the jury should have determined whether and to what extent plaintiff, an intended beneficiary under an invalidly executed codicil, was negligent where she was present at the time the codicil was presented to defendants (nonlawyers) for "witnessing" and was aware that legal advice should be obtained. "[T]he foreseeability of risk is a primary consideration in establishing the element of duty in tort cases." *Robertson v. LeMaster*, 171 W.Va. 607, 612, 301 S.E.2d 563, 568 (1983). "The risk reasonably to be perceived defines the duty to be obeyed[.]" *Palsgraf v. Long Island R.R.*, 248 N.Y. 339, 344, 162 N.E. 99, 100 (1928) (Cardozo, C.J.).

**8.** *Bradley* requires a determination of the negligence or fault of the parties involved in the "accident," not merely of those parties involved in the action. *Sitzes v. Anchor Motor Freight, Inc.*, 169 W.Va. 698, 712, 289 S.E.2d 679, 687 (1982); syl. pt. 3, *Bowman v. Barnes*, 168 W.Va. 111, 282 S.E.2d 613 (1981). Accordingly, the negligence or fault of the decedent in the case now before us is to be determined, regardless of whether his estate or personal representative is made a party to the action.

The principles of comparative negligence are applicable to tort cases involving only a pecuniary loss, as well as to tort cases involving personal injuries or property damage. *Darnell Photographs, Inc. v. Great American Insurance Co.*, 33 Colo.App. 256, 519 P.2d 1225 (1974), *cert. denied* (1974). In that case the comparative negligence statute applied on its face to "negligence resulting in death or in injury to person or property[.]" The court refused to construe narrowly the phrase "injury to ... property" by limiting application of the statute to a physical injury to tangible property. Instead, the court held that "injury to ... property" includes any damage resulting from invasion of one's property rights by actionable negligence. Thus, comparative negligence principles were held to be applicable to an action against an insurance company for negligent failure to increase coverage under an insurance policy, which failure resulted in pecuniary loss by the plaintiff.

The use of the word "accident" in syllabus point 3 of *Bradley, supra*, did not limit the principles of comparative negligence to personal injury or property damage cases. That syllabus point twice used the phrase "negligence or fault." *See Koppers Co. v. Dailey*, 167 W.Va. 521, 525, 280 S.E.2d 248, 251 & n. 8 (1981). "Fault" in this context is broader than "negligence" and "connotes an act to which blame, censure, impropriety, shortcoming or *culpability* attaches." *Black's Law Dictionary* 548 (5th ed.

1979) (emphasis added). In construing the comparative negligence statute in its jurisdiction which applied to "culpable conduct," the court in *Lippes v. Atlantic Bank*, 69 A.D.2d 127, 419 N.Y.S.2d 505 (1979), expressly rejected the argument that comparative negligence principles apply only to personal injury or property damage cases. In so ruling the court made these astute observations:

We find no distinction in logic ... which limits application of the [comparative negligence] rules merely to 'accident' cases to the exclusion of all other causes pursued under a theory of tort liability. To exclude apportionment of damages in a tort action arising from commercial relationships and to insist that contributory negligence remain[s] a bar to any recovery in such cases [comma deleted] would perpetuate the injustice [that the comparative negligence doctrine] addresses and [would] deny the ameliorative effect established by [such doctrine]....

... If the legal principles enunciated by [New York's leading case equivalent to our *Bradley*] are to remain viable, it ... 'should be subject to the dynamics of appropriate growth and refinement' [citation omitted], permitting of a flexible and purposeful application to redress civil wrongs in all manner of tort causes....

Further, the use of the term 'culpable conduct' ... rather than [solely] 'negligent conduct', presents further support to the view that the ... intent was to release the concept of damage apportionment from the parochial confines of accident cases and to broaden its application flexibly 'to reach any breach of legal duty or fault....' Accordingly, one commentator suggests that our 'comparative negligence' law be renamed generically as the 'comparative fault' law.

69 A.D.2d at 136–38, 419 N.Y.S.2d at 510–11.

## VII. *Conclusion*

For the foregoing reasons we reverse the final order of the trial court, set aside the verdict of the jury and remand this case for a new trial consistent with the principles set forth in this opinion.

Reversed and remanded; new trial.