KOPPERS CO., INC.

*v.*

RICHARD L. DAILEY,

AS TAX COMMISSIONER

(No. 14683)

Decided July 14, 1981.

*Chauncey H. Browning,* Attorney General, *C. Page Hamrick III,* Special Assistant Attorney General, for appellant.

*Love, Wise, Robinson & Woodroe, E. Glenn Robinson and Robert E. Magnuson* for appellee.

MILLER, JUSTICE:

The question presented in this appeal is whether under our business and occupation tax (W. Va. Code, 11-13-1, *et seq.),* certain activities of Koppers Company, Inc., (Koppers), should be taxed at the contracting rate (W. Va. Code, 11-13-2e), or the service rate (W. Va. Code, 11-13-2h). Because of the substantial difference between the two rates, the issue is of some financial importance. The Circuit Court of Kanawha County ruled that the service rate should apply and the tax commissioner appeals.[1] For reasons stated herein, we reverse the circuit court.

The underlying activities which give rise to the tax question are not materially disputed. Koppers had entered into a contract with Ohio Power to assemble and install six electrostatic precipitators at one of its power plants in West Virginia. The purpose of these precipitators, which were sizable structures affixed to the power plants, was to remove fly ash contained in the smoke emitted from the power plant.[2]

Koppers also had another contract[3] with the Weirton Steel Division of the National Steel Corporation to provide labor and material for the installation of eighty-seven coke

---

[1] A subsidiary issue decided below was that Koppers was entitled to be taxed under the business and occupation wholesale tax rate, W. Va. Code, 11-13-2c, on materials furnished on the Weirton Steel project. This issue is not separately argued on appeal and in view of our holding on the applicability of the contracting tax rate, we do not discuss this issue.

[2] The record discloses that the precipitators varied in size from 15 to 100 feet in width, 20 to 60 feet in length, and 40 to 180 feet in height. Some of the component parts were fabricated out of state. The total contract price for construction and installation was approximately $3,456,520. Structural steel affixed to foundation based plates is erected which is used to support the precipitator units.

[3] Koppers actually had three separate contracts with Weirton covering (1) the cost of material; (2) the cost of erection (labor); and (3) the cost of engineering. The trial court found that the three contracts were essentially a unitary contract for the construction of the 87 coke ovens. The taxpayer does not controvert this finding on this appeal.

ovens located at Brown's Island, Hancock County, West Virginia.

No contention is made in this case that the imposition of the business and occupation tax violates the Commerce Clause of the United States Constitution.[4] What is at issue is the proper classification of Koppers' activities to determine whether they are contracting activities or fall into the business and occupation tax category termed "other services."

The dichotomy between the taxpayer and the tax commissioner may be simply stated. The taxpayer begins with the customary rule that tax statutes are strictly construed, and when there is some ambiguity regarding meaning of such laws they should be liberally construed in the taxpayer's favor. *Consolidation Coal v. Krupica,* 163 W. Va. 74, 254 S.E.2d 813 (1979); *Woodell v. Dailey,* 160 W. Va. 65, 230 S.E.2d 466 (1977). The taxpayer then cites a number of ad valorem tax cases in which courts have held, in determining whether a particular building or structure should be taxed as real or personal property, that such building or structure is personal property. The taxpayer reasons that based on these cases the precipitators and the coke ovens should be classed as "personal property." Finally, the taxpayer argues that contracting work done on personal property is, according to the tax commissioner's own regulations, taxed not at the contracting rate but at the service rate.[5]

---

[4] Article 1, Section 8, Clause 3, United States Constitution. *See J. C. Penney Co., Inc. v. Hardesty,* 164 W. Va. 525, 264 S.E.2d 604 (1979); *Virginia Foods of Bluefield, Inc. v. Dailey,* 161 W. Va. 94, 239 S.E.2d 770 (1977).

[5] Taxpayer refers to this portion of Reg. BOT 6.53:

"(a) *Services to Personal Property.* Where a person renders a service to personal property belonging to others, e.g. mechanic repairing another's automobile, the gross income derived from the work or labor performed in rendering the service shall be reported under the service classification."

This regulation was in effect prior to July 1, 1974, and during the tax years under audit in this case which were January 1, 1969, to December 31, 1973. The currect regulation, effective July 1, 1974, is Reg. BOT §1.2h.

The tax commissioner, on the other hand, argues that the precipitators and the coke ovens are not personal property but are structures built on and permanently affixed to the power plant, and, in the case of coke ovens, to the ground, and that the sale and installation of these items by Koppers under contract to Ohio Power Company and Weirton Steel is taxable under W. Va. Code, 11-13-1, which provides:

> " 'Contracting' shall include the furnishing of work, or both materials and work, in the fulfillment of a contract for the construction, alteration, repair, decoration or improvement of a new or existing building or structure, or any part thereof, or for the alteration, improvement or development of real property."

We have consistently held that our business and occupation tax is a tax upon the privilege of engaging in certain business activities in this State. This is the underlying rationale that permits taxation under more than one category of our business and occupation tax if the taxpayer is engaged in more than one type of business in this State. *Virginia Electric and Power Company v. Haden,* 157 W. Va. 298, 200 S.E. 2d 848 (1973), *cert. denied,* 416 U.S. 916 (1974); *United Fuel Gas Co. v. Battle,* 153 W. Va. 222, 167 S.E.2d 890 (1969), *cert. denied,* 396 U.S. 116 (1969); *J. D. Moore, Inc. v. Tax Commissioner,* 147 W. Va. 611, 129 S.E.2d 722 (1963).

Because our business and occupation tax focuses on the particular business activity,[6] we do not consider relevant cases involving ad valorem property tax. Their lack of relevancy lies in the fact that ad valorem property tax cases are mainly concerned with whether the property is real or personal because of the different tax rates levied on real and personal property. Moreover, in the case of leasehold interests, there may be divided ownership

---

[6] W. Va. Code, 11-13-2, *et seq.*, imposes a business and occupation tax on the following activities: severance of coal and other natural resources; manufacturing; selling tangible property; public service or utility business; contracting; operating amusements; service business not other wise taxed; furnishing property for hire; small loan and industrial loan business; banking and other financial business.

between the real and personal property and consequently a contest over which taxpayer owes the tax. *Cf. The Great A & P Tea Company, Inc. v. Carney,* ____ W. Va. ____, 278 S.E.2d 352 (1981). When we view our business and occupation tax in its entirety, we find little within its structure that gives any significance to the distinction between real and personal property.[7]

As in the case of most tax controversies, the issues must ordinarily be resolved by scrutinizing the applicable tax statute. It appears to us that the definition of "contracting" as contained in W. Va. Code, 11-13-1, is clear and unambiguous. The definition first includes the furnishing of materials and work in the fulfillment of a contract. Certainly, there was work and the furnishing of materials in the present case. The definition goes on to make more explicit the type of contract, which is "a contract for the construction, alteration, repair, decoration or improvement of a new or existing building or structure, or any part thereof." It is difficult to imagine a more comprehensive definition of contract work nor to envision a project which involves the furnishing of work and material that would not come within this definition. Certainly, the use of the term "building or structure" demonstrates that the legislature did not believe the two words were synonymous.[8]

Courts have recognized a distinction between a building and a structure, the latter is a broader term which

---

[7] The only specific reference to the taxing of real and personal property is found in W. Va. Code, 11-13-2i, furnishing property for hire, and no distinction is made as to rate:

"Upon every person engaging or continuing within this State in the business of furnishing any real or tangible personal property, which has a tax situs in this State, or any interest therein for hire, loan, lease or otherwise, whether the return be in the form of rentals, royalties, fees or otherwise, the tax shall be one and fifteen one-hundredths percent of the gross income of any such activity."

[8] The word "or" is a disjunctive participle which indicates the various objects with which it is associated are to be treated separately. In *State v. Elder,* 152 W. Va. 571, 165 S.E.2d 108 (1968), we said the word "or" in the statute under consideration denoted alternatives between the two phrases it connected.

encompasses the former. *Skinner v. Henderson*, 556 S.W.2d 730, 733 (Mo. App. 1977); *cf. State v. Royal Indemnity Co.*, 99 W. Va. 277, 287, 128 S.E. 439, 443 (1925). Again, it is clear that the legislature intended the broadest possible coverage through alternative reference to these two terms. The contractual activity of Koppers for the construction of the precipitators at the power plant was at the very least an "alteration" to that structure or building.[9] Moreover, the construction of the battery of 87 coke ovens must fall within the concept of a structure.[10]

Finally, we note the definition of "contracting" concludes to cover the one area of contract work excepted from the first phrase, "the alteration, improvement or development of real property."

When we turn to the statutory definition of a "service business or calling," which is the category sought by the taxpayer, we find little to support his activity as a service under the statutory definition:

> " 'Service business or calling' shall include all activities engaged in by a person for other persons for a consideration, which involve the rendering of a service as distinguished from the sale of tangible property, but shall not include the services rendered by an employee to his employer. This term shall include, but not be limited to:
>
> "(a) Persons engaged in manufacturing, compounding or preparing for sale, profit or commercial use, articles, substances or commodities which are owned by another or others;
>
> "(b) Persons engaged as independent contractors in producing natural resource products which are owned by another or others, as personal property, immediately after the same are severed, extracted, reduced to possession and produced;

---

[9] Obviously, the precipitators could also be considered as an "improvement" for, aside from the environmental consequences, something of value was added to the building.

[10] It appears from the record that the coke oven battery was a multilevel structure whose overall cost was approximately $44,702,638.

"(c) The repetitive carrying of accounts, in the regular course and conduct of business, and extension of credit in connection with the sale of any tangible personal property or service, except as to persons taxed pursuant to the provisions of section two-k [§ 11-13-2k] of this article."

One is struck at once by the fact that this definition has nothing to do with the construction of items of personal property. Consequently, even if the taxpayer was correct that the precipitators and coke ovens are personal property, we do not see how its activities in this case fit the definition of "service business or calling." The definition section indicates that services can be rendered in connection with tangible property owned by another, but here the objects were not owned by another until they were constructed by Koppers. Thus, taxpayer's reliance on Reg. BOT 6.53(a)[11] is misplaced for the reason that Koppers did not render a service to the personal property owned by another but fabricated a new structural addition.

A more relevant portion of Reg. BOT 6.53 is the last paragraph of subsection (b):

"Persons who furnish work or labor or material and work or labor to real property and the work or labor is *not* furnished on an hourly basis, daily basis, footage basis, or other similar basis the gross income derived therefrom is subject to tax under the contracting classification, BOT 6.56." (Emphasis in original)

The precise issue here involved has not been decided by this Court, nor have we found any helpful precedent elsewhere. It is interesting to note that in the two cases reported in West Virginia involving construction work, the taxpayer was erecting a structure and the tax was reported under the contracting category, W. Va. Code, 11-13-2e. No issue was raised that the correct category was the service classification. *Dailey v. Bechtel Corporation*, 157 W. Va. 1023, 207 S.E.2d 169 (1974); *Walter Butler Building Company v. Soto*, 142 W. Va. 616, 97 S.E.2d 275 (1957).

---

[11] See footnote 5, *supra*.

528

For the foregoing reasons, we conclude that where a taxpayer is engaged in furnishing work or work and material for the construction, alteration, repair, decoration, or improvement of a new or existing building or structure or for furnishing work or work and material for the alteration, improvement or development of real property, such taxpayer is engaged in the business of contracting and is liable for business and occupation tax at the contracting rate contained in W. Va. Code, 11-13-2e. Consequently, the judgment of the Circuit Court of Kanawha County is reversed and the case is remanded.

*Reversed and Remanded.*