365 S.E.2d 364

**FRAME ELECTRIC, INC.**

v.

**Michael E. CARYL, State Tax Commissioner.**

**No. 17164.**

Supreme Court of Appeals of West Virginia.

Dec. 19, 1986.

Rehearing Denied Feb. 17, 1987.

Dissenting Opinion Aug. 17, 1987.

Robert E. Magnuson and Ernest H. Gilbert, Love, Wise & Woodroe, Charleston, for appellant.

Gregory A. Morgan, Asst. Atty. Gen. and Mary Carol Holbert, Asst. Atty. Gen., Tax Div., Charleston, for appellee.

BROTHERTON, Justice.

In this case, Frame Electric, Inc. appeals from a decision of the Circuit Court of Kanawha County, which affirmed the appellant's liability for West Virginia Business and Occupation Tax at the contracting rate (2.2%) rather than the service rate (1.15%). The appellant taxpayer asserts that labor provided at an hourly rate on personal property belonging to others is "service" under both the definition in W.Va.Code § 11–13–1 (1983) and many years of administrative practice. The Commissioner, as appellee, counters that "contracting," as defined in the statute and by this Court, is a comprehensive term that includes the appellant's activity. Based on the legislative intent as reflected in the development of the statute and the regulations thereunder, we conclude that appellant's activity was "service," and reverse the decision of the circuit court for the reasons set out below.

Frame Electric is a West Virginia corporation with its principal offices in Charleston, West Virginia. It engages in the business of general electrical repair, maintenance, and construction. The State Tax Department audited the taxpayer for the period March 1, 1970, to February 28, 1975. For the period prior to July 1, 1974, the Commissioner accepted the taxpayer's reporting of receipts from electrical work in the service category. For the time after July 1, 1974, however, such income was reclassified as contracting, resulting in a

1. The State Tax Commissioner issued new regulations effective July 1, 1974, relevant parts of

deficiency of $3,205.47, the amount contested in this appeal.[1]

At an administrative hearing, Doran Frame, the president and principal stockholder of the taxpayer corporation, testified about nine work projects performed by his company during the audit period, receipts for which had been reclassified from the service classification to the contracting classification. After the hearing, the Commissioner issued an administrative decision ruling that four of these jobs were properly taxed under the service classification, but that five jobs should be taxed at the contracting rate. The following jobs were held to be properly taxable as service:

1. The *Webb Electric Company* job—supplying electricians at an hourly rate to remove controls and wiring on an overhead crane that was being moved to another location.

2. The *Sears Monument Company* job—installing free-standing compressor units used for sandblasting monuments, and connecting them to a source of electrical power.

3. The *Raleigh Junk Company* job—connecting hydraulic presses, metal covers and similar machinery at a junkyard for use in reclaiming junk metals.

4. The *Charleston Downtown Association* job—erecting and removing Christmas lighting decorations in downtown Charleston.

The jobs held to be taxable as contracting were:

1. The *Royal Crown Bottling Company* job—repair of soft drink bottling machines.

2. The *Diamond Department Store* job—installation of free-standing refrigerated display cabinets, and connection of the cabinets to an existing power source.

3. The *Rose City Restaurant* job—a $16.50 service call, probably relating to breakdown of a refrigerator.

which are discussed below.

4. The *Ferro-tech* job—electrical work on a dust collector at the Union Carbide Corporation plant at Alloy.

5. The *Mid-Continent* job—providing electricians for another company which was billed monthly for the number of man-hours supplied at an agreed hourly rate.

Frame appealed to the circuit court, which affirmed the administrative decision, relying on the Commissioner's 1974 regulations and the decision of this Court in *Koppers Co. v. Dailey*, 167 W.Va. 521, 280 S.E.2d 248 (1981). Frame now asks us to reexamine and define the line between service and contracting. To do so, we must first review the statute and its history.

## I.

The legislature enacted the business and occupation tax in substantially its present form in 1933. W.Va.Code § 11–13–1 through –23 (1933). That act imposed a 2% tax on gross income from contracting, and a 1% tax on gross income from "any service business or calling not otherwise specifically taxed." W.Va.Code § 11–13–2e & h (1933). Section 1 of the 1933 act defined "service," although "contracting" was not defined until much later. The original section provided:

"Service business or calling" shall include all nonprofessional activities engaged in for other persons for a consid-

eration, which involve the rendering of a service as distinguished from the production or sale of tangible property, but shall not include the services rendered by an employee to his employer.

This definition appears, without change relevant to this case, in the current statute.[2]

The definition of "contracting" came into the statute twenty-two years later:

"Contracting" shall include the furnishing of work, or both materials and work, in the fulfillment of a contract for the construction, alteration, repair, decoration or improvement of a new or existing building or structure, or any part thereof, or for the alteration, improvement or development of real property.

W.Va.Code § 11–13–1 (1955). This definition also has remained unchanged through several legislative re-enactments of § 11–13–1.

The contracting definition, when enacted, was a codification of administrative regulations first published in 1941 by Commissioner George P. Alderson.[3] The same regulations recognized, and tried to clarify, certain gray areas between "contracting" and "service." Page 13 of the 1941 regulations provided:

Persons engaged in the business of drilling wells, where so much per lineal foot is the measure of remuneration, shall report their gross receipts under section 2–h, service classification.

2. The legislature in 1967 deleted the word "nonprofessional" from the definition, making professional services subject to the tax. *See Neal v. City of Huntington*, 151 W.Va. 1051, 1054–55, 158 S.E.2d 223, 225 (1967). The current section provides:

"Service business or calling" shall include all activities engaged in by a person for other persons for a consideration, which involve the rendering of a service as distinguished from the sale of tangible property, but shall not include the services rendered by an employee to his employer. This term shall include, but not be limited to:

(a) Persons engaged in manufacturing, compounding or preparing for sale, profit or commercial use, articles, substances or commodities which are owned by another or others;

(b) Persons engaged as independent contractors in producing natural resource prod-

ucts which are owned by another or others, as personal property, immediately after the same are severed, extracted, reduced to possession and produced;

(c) The repetitive carrying of accounts, in the regular course and conduct of business, and extension of credit in connection with the sale of any tangible personal property or service, except as to persons taxed pursuant to the provisions of section two-k [§ 11–13–2k] of this article.

W.Va.Code § 11–13–1 (1983).

3. Page 8 of the 1941 regulations provided:

Definition of Contracting Business

A person engaged in the contracting business is one who furnishes work, or both material and work in the fulfillment of a contract to repair or improve existing buildings or structures or to erect a building or structure which by its nature becomes real property, or who improves or changes real property.

Where the charge is on a lump sum or cost-plus basis, gross receipts shall be reported under section 2-e, contracting classification.

This was the first written recognition of the "unit price rule," which eventually characterized work or labor performed on an hourly basis, daily basis, footage basis, or other similar basis, as service. *See* Reg. BOT 6.56(i) (1964). The 1941 regulations, on page 14, also characterized repair and servicing of awnings, which could be considered contracting under the statutory definition because it involves providing work for the repair of something attached to a building, as service:

Repair, servicing or storage of awnings is classified as a service business. Proceeds derived from such business must be reported under Item H, the service classification.

Regulations issued in 1952, by Commissioner C.H. Koontz included an expanded definition of contracting,[4] which included a proviso that taxed work performed on an hourly basis in the service category:

Contracts for labor only are subject to the tax. Work done by the day or hour at the prevailing rate for the particular type of work involved and not on a cost-plus basis is not subject to the tax under the contracting classification. Such work is subject to the tax under Item H, service classification,

. . . . .

W.Va. BOT Regs. at 24 (1952).[5]

The significance of the 1941 and 1952 regulations quoted is that the statutory definition of contracting came from these regulations—regulations that recognized certain "gray area" activities as properly taxable in the service category when performed under open-ended contracts.[6]

Regulations issued in 1955 by Commissioner Milton J. Ferguson, soon after the definition of contracting entered the statute, confirmed the implication that the legislature intended the statutory definition of contracting to include the administrative interpretation regarding hourly labor. The contracting regulations again recognized work "performed by the day or hour at the prevailing rate" as properly reportable in the service category. Reg. BOT § 33 (1955). They also repeated the "time and

4. A person engaged in the contracting business is one who furnishes work, or both material and work, in the fulfillment of a contract, either written or implied, for the constructing, repairing, decorating or improving of new or existing buildings or structures or who improves or changes or otherwise develops real property.

The term *"building or structures"* means everything artificially built up or composed of parts joined together in some definite manner and attached to real property.

The terms *"constructing, repairing, decorating or improving new or existing buildings or structures"* and *"improves or changes real property"* include the furnishing and installing or attaching of materials, machinery or other equipment in or to real property necessary to the completion or improvement thereof regardless of whether or not such materials, machinery, etc., technically become a part of the realty by virtue of such installation. W.Va. BOT Regs. at 23 (1952).

5. The 1952 regulations also included "time and materials" regulations for the floor and wall covering business and the plumbing and heating business. Both directed taxpayers to report labor performed on an hourly basis in the service category. The following excerpt is representative.

Gross receipts from "time and material" jobs are to be reported as follows:
(a) Charges for materials are to be reported under Item C-1, gross income of retailers, or Item C-2, gross income of wholesalers, depending on whether the sale is at retail or wholesale.
(b) Charges for labor are to be reported under Item H, service classification.

* * * * * *

Gross receipts from sanding, painting, etc., of walls and/or floors performed under contract, either written or implied, are to be reported under Item E, contracting classification. Receipts from sanding, painting, etc., performed at the prevailing rate per hour and not on a cost-plus basis, and billed to the customer at the rate per hour are to be reported under Item H, service and all other business.
W.Va. BOT Regs. at 38.2 (1952). *See also id.* at 57 (plumbing and heating business). The same regulations recognized such installations as an improvement to real property.

6. Commissioner Koontz issued an additional set of regulations, which echoed relevant parts of the 1941 regulations, sometime between 1947 and 1952.

materials" rules with respect to the floor and wall covering and plumbing and heating businesses, Regs. BOT §§ 46, 64 (1955), and retained the rule that installing, repairing, and servicing awnings constituted service, Reg. BOT § 56 (1955).

The next revision of the regulations was by Commissioner G. Thomas Battle, effective August 30, 1964. With respect to contracting, BOT 6.56(i) provided:

*Contract for Work or Labor Only.* Persons who furnish only work or labor on a turnkey job contract, cost plus fixed fee contract, lump sum contract, or other contracts having a similar basis shall report the gross income derived therefrom under the contracting classification.

Persons *who furnish only work or labor on an hourly basis, daily basis, footage basis or other similar basis,* shall report the gross income derived therefrom under the service classification, as set forth in detail in BOT 6.53.

(emphasis added). The 1964 regulations also included the first general regulations regarding the service category. They provided, in part:

(a) *Services to Personal Property.* Where a person renders a service to personal property belonging to others, e.g. mechanic repairing another's automobile, the gross income derived from the work or labor performed in rendering the service shall be reported under the service classification.

\*    \*    \*    \*    \*    \*

(b) *Services to Real Property.* Where a person agrees with another to furnish work or labor or material and work or labor on a "time and material" basis, the gross income derived from the work or labor is taxable under the service classification and the gross income derived from the furnishing or sale of material is taxable under the retail or wholesale classification, as the case may be.

In all cases where the service rendered involves work or labor charged on an hourly basis, daily basis, footage basis, or other similar basis, whether the labor charges are for work rendered to personal or real property, the gross income

shall be reported under the service classification.

Persons who furnish work or labor or material and work or labor to real property and the work or labor is *not* furnished on an hourly basis, daily basis, footage basis, or other similar basis the gross income derived therefrom is subject to tax under the contracting classification, BOT 6.56.

BOT 6.53 (1964). These regulations remained in effect until July 1, 1974.

This legislative and administrative history through 1974 shows an uninterrupted tradition from the very inception of the business and occupation tax of classifying certain activities that included the provision of labor or labor and materials for repair or improvement of things connected to real property (and which could, therefore, come within the statutory contracting definition) as service. Specifically, labor provided on an hourly basis under open-ended contract always enjoyed taxation at the lower service rate, even before "contracting" was defined in the statute.

On June 1, 1974, new regulations became effective, which made several changes directed at contractors who had manipulated contract terms in order to be taxed in the service category. A contract to construct a power line might, for example, specify a price per foot of wire being strung and price per tower to be erected, in order to come within the "unit price" regulation. The new regulations added a broad definition of "buildings or structures," and expressly repudiated any distinction based on "unit price" or "time and materials" contracts:

The term "buildings or structures" means and includes, but is not limited to, everything artificially built up or composed of parts joined together in some definite manner and attached to real property. It includes not only buildings in the general and ordinary sense but also tanks, fences, conduits, culverts, railroad tracks, overhead and underground transmission systems, tunnels, monuments, retaining walls, bridges,

trestles, parking lots and pavement for foot or vehicular traffic.

The term "[constructing], repairing, decorating or improving" of a new or existing building or structure or any part thereof, in addition to its ordinary meaning, includes the installing or attaching of any article of tangible personal property in or to real property, whether or not such personal property becomes a part of the realty by virtue of such installation.

\* \* \* \* \* \*

Persons engaged in the contracting business shall report the entire gross income under the contracting classification, *regardless of whether the contract is a turnkey contract, lump sum contract, per unit contract, cost plus fixed fee contract, or other contracts having a similar basis.* Gross income received from a contracting activity must be reported under the contracting classification and the manner of performance, basis of determining cost, fee or income or form of contract shall not alter the definition of contractor or of contracting and shall not change the taxability of such income from the contracting classification to another classification. A contracting activity remains a contracting activity regardless of what the parties may name it and regardless of the manner in which the parties may make payment and perform the work.

W.Va.Leg.Reg. (BOT) 11–10, Series XIII, §§ 1a.01(q)(5) & (6); 2e.05(a) (1974) (emphasis added).[7] The 1974 regulations did, however, retain the regulation regarding services rendered to personal property:

Where a person renders a service to personal property belonging to others, e.g. mechanics repairing another's automobile, the gross income derived from the work or labor performed in rendering the service shall be reported under the service classification.

*Id.* § 2h.02(a).

The regulations thus expanded the unit price concept beyond hourly labor in 1964, then eliminated it entirely in 1974, all with no change in the underlying statute. In addition, the provision regarding work performed on personal property belonging to another further clouded the issue due to the overlap between "personal property" and "structures."

## II.

This Court has addressed the service-versus-contracting issue only once before. In *Koppers Co. v. Dailey,* 167 W.Va. 521, 280 S.E.2d 248 (1981), the Court concluded that the taxpayer, Koppers, was subject to tax at the contracting rate rather than the service rate on (1) a contract to assemble and install electrostatic precipitators to be affixed to a power plant; and (2) a contract to provide labor and materials for installation of eighty-seven coke ovens at a steel company. Koppers had contended that the precipitators and coke ovens were personal property, and that its work on them was, therefore, service. This Court on appeal downplayed any distinction based on whether the taxpayer was working on real or personal property, and concluded that both electrostatic precipitators and coke ovens were "structures" under the Code definition of contracting. It observed that the statutory definition of contracting is clear and unambiguous, even saying "[i]t is difficult to imagine a more comprehensive definition of contract work or to envision a project which involves the furnishing of work and material that would not come within this definition." 167 W.Va. 525, 280 S.E.2d at 251.

The period in issue in *Koppers* was 1969–1973, and the Court was not, therefore, concerned with the 1974 regulations. *See,* 167 W.Va. 523, 280 S.E.2d at 250 n. 5. Neither was the unit price rule, quoted in part in the opinion, in issue in that case.[8]

---

**7.** The 1974 regulations were refiled December 29, 1982. Citations herein are to the regulations as renumbered at that time.

**8.** The opinion notes expressly that Koppers' activity came within the 1964 regulations that made work *not* furnished on a unit price basis taxable in the contracting classification. 167 W.Va. 527, 280 S.E.2d at 252.

The Court simply concluded that assembly and installation of sizeable structures affixed to industrial plants was not a service activity. In doing so, it observed that the precipitators and coke ovens were not "personal property owned by another." They were, rather, new structural additions owned by Koppers until it completed construction. 167 W.Va. at 527, 280 S.E.2d at 252. Thus *Koppers* neither repudiated the 1964 regulations' distinctions between service and contracting, nor relied at all on the 1974 regulations' definitions. The case did, however, diminish the significance of characterizing property as "real" or "personal" in defining the reach of the contracting category, and established that erection or installation of industrial equipment constitutes contracting if the equipment is a structure.

### III.

The source of the gray area between service and contracting is overlapping statutory definitions. Both the Commissioner and taxpayers have exacerbated the problem by seeking to swing that gray area in a favorable direction. Numerous cases pending at the administrative level and in the circuit courts, and the numerous petitions for appeal that have been filed in this Court regarding the issue evidence both the extent of the controversy and the need for resolution.[9]

Our job is to reconcile the overlapping definitions set out in the statute. We could do this by drawing the bold line suggested in dicta in *Koppers*, which would place all activity involving the provision of labor or labor and materials in the contracting category. This would leave primarily professional and personal services in the service category—lawyers, doctors, accountants, barbers, beauticians, etc. Alternatively, we could draw the line urged by Frame and other taxpayers, which would place all

work performed on "personal property," or which was priced on a unit basis, in the service category. Such lines are appealing, because they would put the service-versus-contracting issue to rest once and for all by making a firm, logical distinction that both the taxpayers and the Commissioner could interpret. To do either, however, would be to cure a statutory ambiguity by means that are simple, but not just. Legislative intent, and not simplicity, must guide our resolution of this issue.

■ We observe first that it was not the Legislature's intent to make the service category residual only, as asserted by the Commissioner in this case. The statute says "service business or calling not otherwise specifically taxed." W.Va.Code § 11-13-2h (1983). Based on the many "gray area" activities taxed as service both contemporaneously with the enactment of the statute and in the many years since 1933, we interpret that phrase to include: (1) service businesses, and (2) callings not otherwise specifically taxed.

■ Next, although the statute itself makes no clear demarcation between service and contracting, administrative practice documented by regulations effective from 1941 to 1974 recognized that labor performed on an hourly basis, whether to real or personal property, was taxable in the service category. This interpretation preceded the statutory definition of contracting, and survived numerous legislative reenactments of § 11-13-1.[10] Moreover, it cannot be repudiated as contrary to the statute. "Service" includes "all activities engaged in by a person for other persons for a consideration, which involve the rendering of a service as distinguished from the sale of tangible property...." W.Va. Code § 11-13-1 (1983). Read alone, this is a very broad definition itself, which certain-

---

9. The business and occupation tax will expire for all but public utility taxpayers on July 1, 1987. W.Va.Code § 11-13-2(b) (Supp.1986). The issue is important nevertheless because of the large number of unresolved disputes dating back to 1974, when the Commissioner revised the regulations, and earlier.

10. 1972 W.Va. Acts 646-47; 1971 W.Va. Acts 896; 1967 W.Va. Acts 1126; 1959 W.Va. Acts 542-43. Legislative reenactment is a weak reed on which to rely entirely, but the observation that the Legislature would have amended the statute had it disagreed with the early Commissioners' interpretations of contracting and service is a helpful one.

ly can encompass hourly labor. We hold, therefore, that labor performed on an hourly basis under open-ended contracts is "service" for purposes of the business and occupation tax.

Common sense supports this holding. A commonly recognized difference between service and contracting is that service is rendered by the hour and contracting is bid by the job. Contracting most often involves construction or large-scale rebuilding-type repairs, where the purchaser needs a firm overall price prior to beginning the work. Service typically is small-scale repairs or installations in which neither the provider nor the purchaser of the services knows at the outset how much labor the job will require.

We acknowledge the Commissioner's determination that true contractors were abusing the intent of the statute when they sought to report under "service" by manipulating contract terms to come within the "unit price" or "time and materials" rules of the 1964 regulations. To the extent that they address such abuses, the 1974 regulations were a valid exercise of the Commissioner's rulemaking authority. The regulations were wrong, however, to the extent that they converted legitimate service activity to contracting, absent either a change in the statute or a showing that the long-standing prior interpretation was contrary to the existing statute.[11]

Our decision to classify work performed by the hour under open-ended contracts is based on a long-standing administrative interpretation to that effect, which we deem to have been incorporated into the statutory definition. It should not be read to reinstate particular provisions in the 1964 regulations. The 1964 regulations were the first statement of a full-blown "unit price" rule. Although the rule was an admirable attempt to simplify reporting in this area, it led to the abuses noted above. The 1974 regulations' elimination of this provision did not deprive taxpayers of any vested right to pay tax at the service rate if they could conceive of a way to phrase price terms on a "per unit" basis. To the extent that the unit price rule placed more activities in the service category than the statute required, the Commissioner was not bound to retain it in subsequent regulations.[12]

A more difficult issue is the status of the regulation regarding services to personal property belonging to another. BOT 6.53(a) (1964); W.Va.Leg.Reg. (BOT) 11–10, Series XIII, § 2h.02(a) (1974). It is the taxpayer's position that industrial machin-

---

**11.** The 1974 contracting regulations track almost verbatim the definitions of "buildings or structures" and "constructing, repairing, decorating or improving of new or existing buildings or structures" set out in an administrative rule promulgated by the State of Washington. *See* Wash.Admin.Code § 458–20–170 (Rule 170), [1 Wash.] St.Tax Rep. (CCH) ¶ 68–570. Many of the provisions found by West Virginia taxpayers to constitute departures from previous practice when incorporated into the law of this State appear in the underlying statute in Washington. For example, § 82.04.050 of the Washington Code classifies together "the constructing, repairing, decorating, or improving of new or existing buildings or other structures under, upon, or above real property of or for consumers, underscored; including the installing or attaching of any article of tangible personal property therein or thereto, whether or not such personal property becomes a part of the realty by virtue of installation...." The underlined phrase was inserted in the West Virginia regulations without similar statutory source. The drafters of the 1974 regulations even recognized its incongruity, saying that constructing, etc. included such activity "in addition to its ordinary meaning." W.Va.Leg.Reg. (BOT) 11–10, Series XIII, § 1a.01(q)(6) (1974). Whereas such an extension might be an attractive enhancement of the fisc, the 1974 regulations exceeded the scope of the Commissioner's rulemaking authority by taking the language of the statute beyond "its ordinary meaning."

Moreover, the distinction between contracting and service is of little significance for Washington business and occupation tax purposes, because both prime contractors and service providers pay tax at the retail sales rate. Wash. Rev.Code § 82.04.050; Wash.Admin.Code § 458–20–170 (Rule 170); Wash.Admin.Code § 458–20–173 (Rule 173); Wash.Admin.Code § 458–20–138 (Rule 138).

**12.** Whether the Commissioner is bound by the unit price rule prior to July 1, 1974, is not in issue in this case. We note, however, that either the Commissioner or the circuit court has allowed audited taxpayers to report proceeds of unit price contracts under "service" prior to the effective date of the 1974 regulations in all cases currently on appeal.

ery, refrigerators, etc. are personal property, and that therefore all work performed on them is "service." The Commissioner asserts that industrial machinery and refrigerators are "structures," *i.e.*, things artificially built up or composed of parts joined together in a definite manner and attached to real property, and that therefore all work on them is "contracting." Here, the regulations, like the statutory definitions, overlap and must be reconciled in some logical manner. We cannot endorse an interpretation that renders an electrician repairing a light or a plumber repairing a toilet "contractors" merely because they service fixtures attached to real property. Conversely, as we made clear in *Koppers*, to characterize assembly and installation of an electrostatic precipitator as "service" because the structure might technically qualify as personal property is an equally absurd conclusion.[13]

■ By repudiating the distinction between real and personal property as a basis for determining tax consequences, *Koppers* emasculated the regulation in 1981, at least in the context of industrial machinery. Further, because the regulations' definition of contracting overlaps with the regulation regarding work performed on personal property belonging to others whenever the property also constitutes a structure, it appears that reliance on the latter regulation was not so "reasonable" as to require judicial protection. We hold, therefore, that work performed on industrial machinery that is a structure is service only if it is performed on an hourly basis under open-ended contract. All other construction, alteration, repair, decoration, or improvement of machinery that constitutes a structure is properly taxed in the contracting category. The statutory definition of service does not mention personal property, and the regulation cannot operate to make an activity

"service" that comes within the statute's definition of "contracting."

■ We note that it is difficult to consider a refrigerator, or even a refrigerated display case, a "structure" if it is connected to the real estate only by electrical wiring. The Commissioner's regulations define "buildings or structures" to include "everything artificially built up or composed of parts joined together in some definite manner and attached to real property," citing specific examples of structures that are not buildings.[14] This definition is a sound one, but "attached" must be interpreted to mean imbedded in or permanently resting upon, such as when it is attached by cement, plaster, nails, bolts or screws. Thus large equipment and piping in an industrial plant constitute a structure if imbedded in or bolted to concrete or other permanent foundations, but a refrigerator attached to the real estate only by wires, or a piece of equipment that operates on a track, is not a structure because it is not firmly attached to the real estate.

We recognize that we, as a Court, are not equipped to map out comprehensive regulations, and therefore cannot eliminate the gray area between contracting and service. We hope to lay to rest many cases, however, by emphasizing the narrow scope of this holding. Our opinion is not intended to reinstate the 1964 regulations in their entirety. Moreover, it does not apply to contracts specifying hourly rates as a backup for the total contract price, or hourly rates accompanied by a firm estimate, or to anything other than a truly open-ended contract. By open-ended, we mean an agreement for which the ultimate consideration cannot be determined until the job is completed.

## IV.

■ Looking at the five jobs that were reclassified from service to contracting in

---

**13.** The precipitators in *Koppers* ranged from 15–100 feet wide, 20–60 feet long, and 40–180 feet high, and the units were supported by structural steel affixed to foundation base plates. The total contract price for their assembly and installation was approximately $3.5 million. 167 W.Va. at 522, 280 S.E.2d at 249 n. 2.

**14.** W.Va.Leg.Reg. (BOT) 11–10, Series XIII, § 1a.01(q)(5) (1974) (quoted in full in text at n. 7).

this case, all five were provided under open-ended, hourly contracts. Repairing a refrigerator for Rose City Cafeteria, repairing a bottling machine for Royal Crown Bottling, and installing free-standing refrigeration units in the Diamond Department Store were all typical service calls, and the proceeds therefrom were properly reported in the service category.

Frame also worked on a dust collector for Ferro-tech. The evidence adduced at trial indicated that the dust collector was a large piece of industrial machinery consisting of a conveyor, fans, a hopper, and a screening device, used to collect metal particles from the air at a railroad loading site. Although it could be argued that the dust collector was a structure, what distinguishes this case from *Koppers* is that Frame repaired an existing piece of machinery for another on an open-ended hourly contract. We find, therefore, that the proceeds were properly reported in the service category.

Taxpayer's Mid–Continent job was strictly the provision of labor. The 1974 regulations include a provision that says that employment agents are ordinarily taxed in the service category,[15] and we believe that a company providing electricians for a job it is not itself obligated to perform constitutes labor brokerage, or service. The company that used Frame's electricians

may have been performing a contracting activity, but Frame was not.

For the reasons stated above, we reverse the decision of the circuit court in this case.[16]

Reversed.

McGRAW, C.J., and MILLER, J., dissent and reserve the right to file dissenting opinions.

MILLER, Justice, dissenting:

My disagreement with the majority rests on its rewriting of the Tax Commissioner's regulations. The majority's Syllabus Point 1, which holds that "[l]abor provided on an hourly basis under open-ended contracts constitutes 'service' for the purposes of the West Virginia Business and Occupation Tax," patently contradicts W.Va.Leg.Reg. (BOT) 11–10, Series XIII, §§ 1a.01(q)(5), 2e.05(a) (1974).[1] The majority recognizes this fact when it remarks that the "regulations thus expanded the unit price concept beyond hourly labor in 1964, then eliminated it entirely in 1974, *all with no change in the underlying statute.*" 179 W.Va. at 89, 365 S.E.2d at 369. (Emphasis added).

The applicable statute which provides the basic definition of the term "contracting" for business and occupation tax purposes is

---

15. In general service business or calling includes, but is not limited to, advertising agents, appraisers, architects, attorneys, barbers, beauticians, collection agents, court reporters, dentists, doctors, detectives, engineers, *employment agents*, funeral directors, janitors, kennel operators, laundries, teachers, school operators, laboratory operators, veterinarians, window cleaners, and others. It also includes persons engaged in the business of cleaning, repairing, improving, etc., the personal property of others. The term does not include persons who render services to others in the capacity of employees as distinguished from independent contractors.
Leg.Reg. 11–10, Series XIII, Section 2h.04 (1974) (emphasis added).

16. The taxpayer also argued that the State Tax Department violated the equal protection clause by singling Frame out for assessment when it allowed other taxpayers similarly situated to change their method of reporting on a "going-forward" basis. Because we hold that Frame's

activity was service, it is not necessary to address this argument.

1. The relevant portion of the regulation is:
"Persons engaged in the contracting business shall report the entire gross income under the contracting classification, regardless of whether the contract is a turnkey contract, lump sum contract, per unit contract, cost plus fixed fee contract, or other contracts having a similar basis. Gross income received from a contracting activity must be reported under the contracting classification and the manner of performance, basis of determining cost, fee or income or form of contract shall not alter the definition of contractor or of contracting and shall not change the taxability of such income from the contracting classification to another classification. A contracting activity remains a contracting activity regardless of what the parties may name it and regardless of the manner in which the parties may make payment and perform the work."

W.Va.Code, 11–13–1.[2]  With regard to the definition of "contracting," we said in *Koppers Co., Inc. v. Dailey,* 167 W.Va. 521, 525, 280 S.E.2d 248, 251 (1981), that "[i]t is difficult to imagine a more comprehensive definition of contract work nor to envision a project which involves the furnishing of work and material that would not come within this definition."

Certainly, the general nature of the definition of "contracting" enables the Tax Commissioner to flesh out its details by way of regulations.  Explicit statutory recognition of the right of the Tax Commissioner to issue regulations is found in W.Va.Code, 11–10–5(a).  In *Rowe v. W.Va. Dept. of Corrections,* 170 W.Va. 230, 292 S.E.2d 650 (1982), we spoke to the right of administrative agencies to issue rules and regulations and concluded in Syllabus Point 3:

> "It is fundamental law that the Legislature may delegate to an administrative agency the power to make rules and regulations to implement the statute under which the agency functions.  In exercising that power, however, an administrative agency may not issue a regulation which is inconsistent with, or which alters or limits its statutory authority."

*See also Ney v. State Workmen's Compensation Comm'r,* 171 W.Va. 13, 297 S.E.2d 212 (1982); *Anderson & Anderson Contractors, Inc. v. Latimer,* 162 W.Va. 803, 257 S.E.2d 878 (1979).

The majority tediously traces the various regulations issued by former tax commissioners which attempted to distinguish between "contracting" and "service" work.  This is presumably done to buttress its conclusion that an hourly labor charge on open-ended contract work must fall under the "service" category of the business and occupation tax.

The fact that various tax commissioners have amended the tax regulations in an attempt to delineate the difference between "contracting" and "service" work does not give rise to any conclusion that one series of regulations is to be preferred over another.  So long as the current regulations do not conflict with the express language of the tax statute, they should be deemed to be valid.

I know of no rule of law that forecloses a tax commissioner from amending regulations which may have the effect of increasing coverage of the contracting category so long as the regulation comports with the statutory language.  The majority suggests this is wrong "absent either a change in the statute or a showing that long-standing prior [administrative] interpretation was contrary to the existing statute."  179 W.Va. at 91, 365 S.E.2d at 371.  Nothing is cited to support this proposition mainly because the law is to the contrary.  An administrative agency may alter its regulations to correctly reflect the law.  *See, e.g., Automobile Club of Michigan v. Commissioner,* 353 U.S. 180, 183–84, 77 S.Ct. 707, 710, 1 L.Ed.2d 746, 750 (1957); *Blair v. Estate of Biggins,* 356 N.W.2d 551 (Iowa 1984); *Oral Roberts University v. Oklahoma Tax Commission,* 714 P.2d 1013 (Okl.1985); *Realty Group, Inc. v. Department of Revenue,* 299 Or. 377, 702 P.2d 1075 (1985); 2 Am.Jur.2d, *Administrative Law* § 310 (1962).  An administrative agency by enacting a particular set of regulations does not exhaust its power to alter or amend them.  *International Union v. Michigan Civil Service Comm'n,* 57 Mich. App. 526, 226 N.W.2d 550 (1975).

I can only endorse the majority's statement that it is "not equipped to map out comprehensive regulations," but I suggest that is what the majority has done.  It is extremely simplistic to hold that "[l]abor provided on an hourly basis under open-ended contracts constitutes 'service' for purposes of the West Virginia Business and Occupation Tax," as is done in Syllabus Point 1.  This standard is so loose that it can easily be manipulated to convert the

---

**2.**  W.Va.Code, 11–13–1, in pertinent part, provides: " 'Contracting' shall include the furnishing of work, or both materials and work, in the fulfillment of a contract for the construction, alteration, repair, decoration or improvement of a new or existing building or structure, or any part thereof, or for the alterration, improvement or development of real property."

labor component of any contract to a "service" category.

I, therefore, respectfully dissent.

McGRAW, C.J., joins MILLER, J., in this dissent.